1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                  AT SEATTLE

8  _____
                                      )
9  UNITED STATES OF AMERICA,          )        No. CR06-376RSL
                                      )
10                        Plaintiff,  )        ORDER DENYING DEFENDANT'S
            v.                        )        MOTION TO DISMISS FOR
11                                    )        VIOLATION OF THE INTERSTATE
   STEVE KIE CHANG,                   )        AGREEMENT ON DETAINERS ACT
12                                    )
                          Defendant.  )
13 _____)

14
                             I.  INTRODUCTION
15
            This matter comes before the Court on defendant Steve Kie Chang's "Motion to Dismiss
16
   for Violation of the IADA" (Dkt. ##20, 21).  In his motion, defendant requests dismissal of this
17
   case with prejudice under the Interstate Agreement on Detainers Act ("IAD"), 18 U.S.C. App. §
18
   2, because he claims that the government has failed to try him within 180 days after notice of his
19
   speedy trial request.  The Court held an evidentiary hearing on the motion on January 7, 2007,
20
   and heard oral argument from counsel for the government and defendant.  See Dkt. #29.  For the
21
   reasons set forth below, the Court denies defendant's motion to dismiss.
22
                             II.  DISCUSSION
23
   A.      Background
24
            On January 25, 2005, the State of Washington filed a criminal action against defendant,
25

26 ORDER DENYING DEFENDANT'S MOTION
   TO DISMISS FOR VIOLATION OF IAD

1    State v. Chang, Cause No. 05-C-01535-3KNT, charging him with Unlawful Possession of a

2    Firearm in the Second Degree.  See Dkt. #22 (Nielsen Decl.) at ¶4.  A warrant issued for his

3    arrest.  Id.  In February of 2005, defendant was arrested, posted bond, and was released from

4    custody on February 14, 2005.  Id. at ¶5.  On December 15, 2005, however, defendant failed to

5    appear for his trial and the Superior Court issued a bench warrant for his arrest.  Id. at ¶6.  On

6    October 19, 2006, a federal grand jury returned an Indictment against defendant charging him

7    with 24 counts of presenting forged obligations of the United States and one count of presenting

8    a forged power of attorney.  See Dkt. #1 (Indictment).  Later on October 19, 2006, the court

9    issued a warrant for defendant's arrest.  See Dkt. #4 (Bench Warrant).

10         By this time, defendant was in the custody of the Pierce County Jail.  See Dkt. #22

11    (Lanier Decl.) at ¶5.  Accordingly, on December 6, 2006, the United States Marshals Service

12    lodged a Detainer[1] with the Pierce County Jail for the purpose of notifying the jail and the

13    defendant of the federal charges.  Id.  On December 13, 2006, defendant signed the Detainer, but

14    defendant did not indicate whether he was demanding a speedy trial on the federal charges.  Id.

15    at ¶6; Dkt. #22, Ex. A.  The United States Marshals Service received the Detainer on December

16    15, 2006.  See Dkt. #22 (Lanier Decl.) at ¶6.  On December 15, 2006, the United States

17    Marshals Service highlighted the fact that defendant had not indicated whether he was

18    demanding a speedy trial and sent it back to the Pierce County Jail, with a new, clean copy of

19    the Detainer.  Id.

20

21

22        [1] "A detainer is a notice filed with an institution in which a particular prisoner is incarcerated,

     advising that he is wanted to face pending criminal charges in another jurisdiction, and requesting that the

23    prisoner either be held for the other jurisdiction's prosecutors or that these prosecutors be notified when

     the prisoner's release is imminent."  United States v. Paredes-Batista, 140 F.3d 367, 372 (2d Cir. 1998)

24    (citing Carchman v. Nash, 473 U.S. 716, 719 (1985)).  The "Detainer" as referenced in this Order is

     formally known as a Form USM-17 "Detainer Against Sentenced Prisoner."  See United States v.

25    Johnson, 196 F.3d 1000, 1001 (9th Cir. 1999).

26    ORDER DENYING DEFENDANT'S MOTION
     TO DISMISS FOR VIOLATION OF IAD

On January 19, 2007, the King County Prosecuting Attorney's Office filed a motion for an order directing transfer of defendant from the Department of Corrections-Washington Correctional Center, to the King County Jail for his appearance in the State v. Chang proceedings. See Dkt. #22 (Nielsen Decl.) at ¶7. Also on January 19, 2007, the Superior Court issued an order directing defendant's transportation from the Department of Corrections to King County on or before February 2, 2007. Id. On January 26, 2007, defendant signed a second Detainer, where he affirmed his right to a speedy trial on the federal charges. See Dkt. #22 (Lanier Decl.) at ¶8; Dkt. #21, Ex. B.

On January 29, 2007, the United States Attorney's Office in Tacoma received the Detainer by certified mail. See Dkt. #22 (Lanier Decl.) at ¶8. The package was opened by the intake personnel at the United States Attorney's office in Seattle on January 31, 2007. Id.

On January 30, 2007, defendant was booked in King County Jail for his appearance in the state proceedings. See Dkt. #22 (Nielsen Decl.) at ¶8. On April 30, 3007, the State filed an Amended Information, and later there were several trial continuances. Id. at ¶¶9, 10. On September 20, 2007, a jury trial commenced in Superior Court, and on October 1, 2007, the jury found defendant guilty on all six counts. Id. at ¶¶10, 11. On October 22, 2007, the Superior Court sentenced defendant to a 29.75 term of imprisonment. Id. at ¶12.

On October 25, 2007, the Assistant United States Attorney presented an Amended Application for Writ of Habeas Corpus Ad Prosequendum[2] and the Honorable Monica J. Benton, United States Magistrate Judge ordered the issuance of the amended writ to the Warden of the Department of Corrections for the State of Washington. See Dkt. #22 (Freeman Decl.) at

---

[2] "The writ of habeas corpus ad prosequendum issued by a federal district court is an order commanding the production of a prisoner promptly or by a specified date, whereupon he is turned over to a federal custodian, usually a U.S. Marshal; whereas a detainer is merely a notice that the prisoner is wanted to face pending criminal charges and requires further process before the prisoner is turned over." United States v. Scallion, 548 F.2d 1168, 1173 (5th Cir. 1977).

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS FOR VIOLATION OF IAD

¶¶6, 7.  The amended writ issued on October 25, 2007.  Id. at ¶8.  The next day, the Special

Agent of the United States Secret Service transported defendant from King County Jail to federal

court for his initial appearance.  Id. at ¶9.

**B.    Analysis**

The IAD "is an interstate compact entered into by 48 States, the United States, and the

District of Columbia.  It creates uniform procedures for lodging and executing a detainer by one

State against a prisoner held by another."  United States v. Lualemaga, 280 F.3d 1260, 1263 (9th

Cir. 2002)  18 U.S.C. App. § 2.  Washington is a party to the IAD.  See RCW § 9.100.010.

Under Article III(a) of the IAD, a prisoner:

> shall be brought to trial within one hundred and eighty days after he shall have
> caused to be delivered to the prosecuting officer and the appropriate court of the
> prosecuting officer's jurisdiction written notice of the place of his imprisonment
> and his request for final disposition to be made of the indictment, information, or
> complaint.

18 U.S.C. App. §2.

"In Fex v. Michigan, 507 U.S. 43 (1993), the Supreme Court interpreted this provision to

mean that the 180-day clock does not start until the defendant's demand 'has actually been

delivered to the district court and the prosecuting officer that lodged the detainer against him.'"

United States v. Collins, 90 F.3d 1420, 1425-26 (9th Cir. 1996) (quoting Fex, 507 U.S. at 52)

(emphasis added).  In Collins, the Ninth Circuit held that "Fex instructs us that the IADA means

what it says.  And when it says that the prisoner must have demand 'delivered to the . . .

appropriate court,' that is what it means."  Collins, 90 F.3d at 1426.

Viewed in light of the strict reading of IAD Article III(a) in Fex and Collins, defendant's

motion here fails for one simple reason:  his Detainer (Form USM-17) was never delivered to

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS FOR VIOLATION OF IAD

-4-

this Court prior to the filing of defendant's motion to dismiss,[3] nor was the Court otherwise notified of defendant's invocation of his IAD rights.  See Paredes-Batista, 140 F.3d at 375 ("[W]e hold that the district court correctly applied Fex when it refused to dismiss the indictment against Batista under the IAD where his speedy trial request was not actually delivered both to the United States District Court and the U.S. Attorney").  The Court finds that at the January 7, 2007 evidentiary hearing, defendant presented no evidence that notice of his speedy trial request was actually delivered to the Court and therefore he failed to meet his burden as the moving party.[4]

In Johnson v. United States, the Ninth Circuit reversed the district court's denial of a motion to dismiss under the IAD and held that Johnson substantially complied with IAD Article III(a) when the public defender notified the district court of prisoner's invocation of IAD rights.  Johnson, 196 F.3d at 1001-02.  The facts in Johnson, however, are distinguishable from this case because in Johnson the district court actually received notice of the demand for a speedy trial: "it is undisputed that the public defender's letter to the court contained the information required

---

[3] Form USM-17 states, in part, "I understand that if I do request a speedy trial, this request will be delivered to the Office of the Untied States Attorney who caused the Detainer to be filed.  I also understand that my right to a speedy trial under the IADA is the right to be brought to trial within 180 days after my written notice of request for final disposition of the charges against me has actually been delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court.  I further understand that the 180-day time limit may be tolled by any delays attributable to me, and that I must periodically inquire as to whether my written notice of request for final disposition of the charges against me has been received by the appropriate U.S. Attorney and appropriate U.S. District Court."  See Dkt. #21, Ex. B (emphasis added).

[4] The Court also hereby takes judicial notice under Fed. R. Evid. 201 that it did not receive notice of defendant's speedy trial request until defendant filed his motion to dismiss on November 23, 2007 appending a copy of his Form USM-17.  See Paredes-Batista, 140 F.3d at 375 ("[T]he district judge would not be in any way precluded from taking judicial notice that the court did not receive a copy of [defendant's] speedy trial request, as required by the IAD—and hence, that the 180-day limit was not triggered.") (emphasis in original).

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS FOR VIOLATION OF IAD

by the IAD to be conveyed to the district court, for the letter expressly stated that Johnson was serving a sentence in the state of Washington and that he requested speedy trial." Id. at 1004. In contrast here, the Court did not receive notice of defendant's speedy trial demand until defendant filed his motion to dismiss.

While the Court sympathizes with defendant's frustration at the delay in bringing his case to trial, the Court is bound by the clear language of Fex requiring that the Court receive actual notice. See, e.g., United States v. Daily, 488 F.3d 796, 801 (8th Cir. 2007) ("Here, neither party disputes that Daily gave written notice to the warden, completely fulfilling his obligation under IADA. . . . Actual delivery forecloses the type of constructive delivery that Daily seeks. We are bound by the Supreme Court's holding in Fex that the 180-day notice does not commence until the prosecutor and the district court actually receive notice.").

### III.  CONCLUSION

For all of the foregoing reasons, "Defendant Chang's Motion to Dismiss for Violation of IADA" (Dkt. #20) is DENIED.

DATED this 7th day of January, 2008.

_MNT S Casnik_
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS FOR VIOLATION OF IAD          -6-