UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                        )
UNITED STATES OF AMERICA,               )   No. CR06-376RSL
                                        )
                    Plaintiff,          )   ORDER DENYING DEFENDANT'S
         v.                             )   MOTION TO SUPPRESS EVIDENCE
                                        )   FOR ILLEGAL SEARCH AND
STEVE KIE CHANG,                        )   SEIZURE
                                        )
                    Defendant.          )
_____)

## I. INTRODUCTION

This matter comes before the Court on defendant Steve Kie Chang's "Motion to Suppress Evidence for Illegal Search and Seizure" (Dkt. ##47, 48). In his motion, defendant moves to suppress evidence obtained from a search of his person and a search of his car on November 14, 2005. On February 25, 2008, the Court held an evidentiary hearing on the motion, and heard oral argument from counsel for the government and defendant. See Dkt. #51. For the reasons set forth below, the Court denies defendant's motion to suppress.

## II. DISCUSSION

**A.    Background**

On November 7, 2005, Officer Camden of the City of Milton Police Department ("MPD") was dispatched to a Rite Aid store in Milton to investigate a possible theft. Two Rite

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

Aid employees reported that a well-dressed Asian man bought a pack of cigarettes, a planner, and requested that $400.00 be added to his pre-paid MasterCard. The first employee accepted a check as payment for the items. When the second employee realized that a check had been given as payment, the second employee left the store and approached the suspect who was now in his car and informed him that the store could not accept a check for the pre-paid credit card. When the Rite Aid employee requested that the suspect return the card, the suspect refused and fled in a blue BMW Mini Cooper. The clerk identified the Mini Cooper's license plate number, and a subsequent records check by the MPD revealed that it was registered to defendant Steve Kie Chang.

On November 12, 2005, Officer Luckman of the MPD independently provided the two Rite Aid employees with a photo array of possible suspects for the November 7, 2005 theft. Both employees positively identified defendant Chang as the suspect.

On November 14, 2005, at approximately 2:18 a.m., Officer Luckman was eating his "lunch" in his parked patrol car when a blue Mini Cooper passed him. A license plate check identified defendant Chang as the Mini Cooper's registered owner. Officer Luckman stopped the vehicle in the Emerald Queen Casino parking lot and called for two police units from the City of Fife to assist him. Officer Luckman arrested the defendant for theft, forgery, and possession of stolen property, placed him in handcuffs and read him his *Miranda* rights. The only passenger in the car was cleared and released at the scene by the Fife officers.

Officer Luckman searched defendant after his arrest and found a Washington state driver's license with defendant's picture, but a false name. Officer Luckman also found a wallet containing, among other things, defendant's authentic Washington state driver's license and two credit cards not in defendant's name. After searching defendant, Officer Luckman placed defendant in the back of the patrol car and secured the items found on the defendant, including the wallet, in the front of the patrol car. Once defendant was in the patrol car, Officer Luckman

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

conducted a preliminary search of the Mini Cooper in the casino parking lot. During this search, Officer Luckman found a loaded .45 caliber pistol under the driver-side floor mat, multiple pieces of mail addressed to people other than defendant, three credit cards not in defendant's name, and a 1" x 1" baggy containing what Officer Luckman believed to be methamphetamine based on his training and experience.

By this time, the two units from the Fife Police Department that had been assisting Officer Luckman needed to leave the scene.[1] The lighting in the casino parking lot was also not optimal to conduct a search of the Mini Cooper, and there was a significant amount of early-morning casino traffic. Based on these factors, and having just released the passenger and knowing that defendant had allegedly committed crimes in the Fife area, Officer Luckman decided that in the interest of his safety he should continue the search of the Mini Cooper in a secure location. Given that the Fife Police Department maintained a secure lot only twenty blocks and less than a five minute drive from where he was located, Officer Luckman had the Mini Cooper towed to the Fife lot at approximately 3:36 a.m. Officer Luckman, with defendant still in the back of the patrol car, followed the Mini Cooper while it was towed to the secure lot.

At the Fife Police Department's secure lot, Officer Luckman continued his search of the Mini Cooper while defendant remained in the back of Officer Luckman's patrol car. During this more through search, Officer Luckman discovered a red satchel, containing among other things, a partially completed Washington state driver's license on photo paper, multiple Washington state driver's licenses with defendant's picture but the names of others, a scale with a white residue, a zip-lock bag containing what appeared to be methamphetamine, and mail and credit cards not in defendant's name.

---

[1] Officer Luckman testified that he was the only MPD officer on duty during the early morning hours of November 14, 2005.

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS
-3-

After the search of the Mini Cooper in the secure lot, Officer Luckman took defendant to the Milton police station.  At the Milton police station, Officer Luckman processed the items recovered in the searches, including the wallet which contained not only the two credit cards not in defendant's name, but also a United States Express Mail postal receipt with defendant's name on it and a fragment of a check with a bank account number associated with where the money from the forged bonds was ultimately deposited.[2]

Officer Luckman presented defendant with a Notice of Seizure and Intended Forfeiture pursuant to RCW 69.50.505, which defendant refused to sign.  Later in the morning of November 14, 2005, defendant was transferred to Pierce County Jail and booked on charges including identity theft, forgery, possession of stolen property in the second degree, unlawful possession of a controlled substance with intent, possession of drug paraphernalia, and being a convicted felon in possession of a firearm.

**B.      Analysis**

In this federal case, defendant is charged with 33 counts of passing United States treasury bonds with forged and falsely made endorsements, and 4 counts of presenting a forged power of attorney.  See Dkt. #31 (Superseding Indictment).  In his motion, defendant moves to suppress the evidence derived from the search and seizure of defendant and the Mini Cooper.  See Dkt. ##47, 48.  At the evidentiary hearing, however, the government represented that it did not intend to use at trial any of the material seized from the Mini Cooper.  Instead, the government represented that it intends to use only the material found in defendant's wallet, specifically the Express Mail receipt and the check fragment with the bank account number.  See EH Ex. 500.

---

[2] It is unclear from Officer Luckman's testimony at the evidentiary hearing whether he discovered the Express Mail receipt and the check fragment during the initial search of the wallet in the casino parking lot, or whether he discovered them for the first time when processing the wallet at the Milton police station.  This, however, is a distinction without difference for purposes of the Court's analysis in section II.B.1 below.

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

-4-

1   The government represented that the Express Mail receipt purports to show that defendant sent a
2   package to the Bureau of Public Debt[3] in October of 2005, and the bank account number on the
3   check fragment was the account through which defendant allegedly processed the treasury bonds
4   at issue in this case.

5   After narrowing the items at issue, the parties at the evidentiary hearing focused their
6   attention on whether the Express Mail receipt and check fragment should be suppressed as the
7   product of an unlawful search or seizure under the Fourth Amendment. Accordingly, the Court
8   addresses these items first. The Court also considers the material obtained from the Mini
9   Cooper in the event this material is offered at trial.

10  **1.   Express Mail Receipt and Check Fragment with Bank Account Number**

11  The Fourth Amendment protects individuals against unreasonable searches and seizures.
12  See U.S. Const. Amend. IV. A search conducted without a warrant is "per se unreasonable . . .
13  subject only to a few specifically established and well-delineated exceptions." Schneckloth v.
14  Bustamonte, 412 U.S. 218, 219 (1973) (citations omitted). The government has the burden to
15  show that a warrantless search was reasonable and did not violate the Fourth Amendment.
16  United States v. Carbajal, 956 F.2d 924, 930 (9th Cir. 1992).

17  It is clearly established in the Ninth Circuit that incident to a lawful arrest, a warrantless
18  search of a wallet on the person arrested is permissible under the Fourth Amendment. See
19  United States v. Ziller, 623 F.2d 562, 562 (9th Cir. 1980) ("[A] search of the contents of the
20  wallet is likewise permissible as being an incident to and part of a personal search.").
21  Defendant does not challenge the legality of his November 14, 2005 arrest, nor the search of his
22  person, including his wallet. Defendant contends that the Express Mail receipt and check

---

[3] The Bureau of Public Debt is the agency responsible for the issuance and payment of savings bonds that are purchased by individuals.

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS
-5-

fragment should not have been "seized," but instead should have been returned to him after the search and before he was booked at the Pierce County Jail. At the evidentiary hearing, defendant contended, in an analogy to the "plain view" doctrine,[4] that the Express Mail receipt and the check fragment should not have been seized because the incriminating character of these items was not apparent to Officer Luckman.

Defendant, however, misconstrues the potential evidentiary value of these items. It is true that items clearly having no facial evidentiary value in a wallet—a family photo, for example—should arguably not be seized. Here, however, the Express Mail receipt and check fragment had colorable evidentiary value when connected to the charges for which defendant was arrested—namely, possession of stolen property and identity theft. The wallet in which these items were found contained credit cards not in defendant's name. A wallet containing documents with defendant's name and bank account number in a wallet with credit cards not in defendant's name could be used to show that the credit cards were stolen. Without the items connecting defendant's name and bank account number with the allegedly stolen credit cards, defendant could otherwise assert that the wallet did not belong to him—claiming, for example that he was simply holding the wallet until he could return it to its rightful owner. Therefore, contrary to defendant's assertion, the Court concludes that the content of defendant's wallet was not improperly seized.

Additionally, defendant opposes the <u>seizure</u> of the wallet, as opposed to the <u>search</u>

---

[4] See, e.g., <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 375 (1993) ("Under that [plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object – *i.e.*, if its incriminating character is not immediately apparent, – the plain-view doctrine cannot justify its seizure.") (internal citations and quotation marks omitted)).

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

because the potential evidentiary value of the Express Mail receipt and check fragment found in defendant's wallet did not become apparent until Secret Service Special Agent Brian Augustyn's involvement in January of 2006. At that time, Special Agent Augustyn was attempting to locate defendant as part of his investigation into possible forged treasury bonds when he learned, based on an NCIC check, that defendant was located in Pierce County Jail. Ultimately, Special Agent Augustyn obtained Officer Luckman's report related to the defendant's arrest, which contained photocopies of the contents of defendant's wallet seized on November 14, 2005, including the Express Mail receipt and check fragment. See EH Ex. 2. In essence defendant contests Special Agent Augustyn's "second look" at the contents of the wallet and their admission as evidence in this case, which defendant asserts would not have been possible had the wallet not been seized. Other courts have rejected similar reasoning.

In United States v. Passaro, 624 F.2d 938 (9th Cir. 1980), the defendant was convicted of manufacturing and conspiracy to manufacture a controlled substance. Id. at 940. Before trial, defendant moved *in limine* to exclude a photocopy of a document that had been removed from defendant's wallet during a prior arrest for assault and battery of police officers who had stopped defendant for a speeding violation. Id. When defendant arrived at the initial place of detention for this arrest, defendant's wallet was seized, searched, and the document was photocopied. Id. The document at issue set forth relationships between quantities that a forensic chemist at trial testified were consistent with yields from methamphetamine production. Id. at 941. Defendant's motion to suppress was denied, and the copy of this document was admitted at trial on the methamphetamine charges. The wallet containing the original document had been returned to the defendant. Id. at 943.

On appeal, the Ninth Circuit affirmed the trial court's ruling on the motion to suppress, holding:

Just as the police in [United States v. Robinson, 414 U.S. 218 (1973)] could,

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

> incident to lawful arrest, search the defendant's person, including the contents of a cigarette package found in the defendant's pocket, so too could the search incident to Passaro's arrest include an inspection of the contents of his wallet to discover evidence of crime. Under [<u>United States v. Edwards</u>, 415 U.S. 800 (1974)] "searches and seizures that could be made on the spot at the time of the arrest may legally be conducted later when the accused arrives at the place of detention." 415 U.S. at 803. The search here was valid and reasonable and the evidence seized therefrom was admissible even though it was unrelated to the crime for which Passaro was arrested.

<u>Id.</u> at 944. The Ninth Circuit based its holding on the conclusion that: "the wallet found in the pocket of Mr. Passaro was <u>an element of his clothing</u>, his person, which is, for a reasonable time following a legal arrest, taken out of the realm of protection from police interest" and the Supreme Court's <u>Edwards</u> decision where "[t]he Court held that the warrantless search and seizure of the clothing did not violate the Fourth Amendment, and that once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and the subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other." <u>Id.</u> at 943-44 (emphasis added).

It is the same in this case. Here, the Express Mail receipt and check fragment were photocopied while defendant was being processed by Officer Luckman at the Milton police station. As an element of clothing, defendant's wallet and its contents were lawfully seized without a warrant after his arrest and during processing at the Milton police station. Based on <u>Passaro</u> it is irrelevant that the government intends to offer the Express Mail receipt and the check fragment as evidence of a crime other than that for which the defendant was arrested.

Further support for the Court's denial of the motion to suppress is found in <u>United States v. Aldaco</u>, 477 F.3d 1008 (8th Cir. 2007), where the Eight Circuit affirmed the trial court's denial of defendant's motion to suppress evidence obtained from a warrantless second search of a wallet. <u>Id.</u> at 1016. In <u>Aldaco</u>, the defendant did not challenge the initial search and seizure of

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

his wallet done pursuant to a valid search warrant, but instead contended that once the police determined that the wallet had no evidentiary value and logged it into personal property storage, a warrant or his consent was required to search the wallet for a second time. Id. at 1013-14. The Eighth Circuit rejected Aldaco's argument on appeal, ultimately holding that "we find nothing unreasonable about the second search of Aldaco's wallet where the police previously had lawfully discovered it and taken it for safekeeping." Id. at 1015-16 (citing Lockhart v. McCotter, 782 F.2d 1275, 1279-80 (5th Cir. 1986); United States v. Lacey, 530 F.2d 821, 823-24 (8th Cir. 1976)).

For all these reasons, defendant's motion to suppress the Express Mail receipt and the check fragment is denied.

### 2. Search of Mini Cooper at the Emerald Queen Casino

The lawfulness of the search and seizure of material from the Mini Cooper at the casino parking lot presents a much simpler question. Before discussing this issue, however, the Court notes that the government represented at the evidentiary hearing that it did not intend to offer any of the material obtained from the search of the Mini Cooper.[5] Therefore, the Court provides the following analysis in this section, and in section II.B.3 below, only as guidance in this case should defendant open the door to its admission at trial.

The search and seizure of the items from the Mini Cooper in the casino parking lot was presumptively reasonable under the search incident to arrest exception to the warrant requirement. See New York v. Belton, 453 U.S. 454, 460 (1981) ("[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."). All of the items seized from the Mini Cooper in the casino parking lot were

---

[5] The government, however, reserved its right at trial to present this material should defendant open the door to its admission.

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

found in the car's passenger compartment. In Thorton v. United States, 541 U.S. 615, 622-23 (2004), the Supreme Court held that police can search the entire vehicle passenger compartment incident to the arrest of someone who was a "recent occupant" of the vehicle. Id. at 622 ("Belton allows police to search the passenger compartment of a vehicle incident to a lawful custodial arrest of both 'occupants' and 'recent occupants.'"); 623 ("Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment."). Recently, in United States v. Weaver, 433 F.3d 1104 (9th Cir. 2006), the Ninth Circuit upheld a search of a vehicle incident to arrest even though the search occurred after the suspect was handcuffed and placed in the patrol car. Id. at 1107 (following Thorton); see also United States v. Osife, 398 F.3d 1143, 1144, 1146 (9th Cir. 2005) (upholding search of arrestee's pickup truck after he had been handcuffed and placed in the patrol car).

The search and seizure at issue here was conducted contemporaneously with defendant's arrest and was restricted to the Mini Cooper's passenger compartment of which defendant was a "recent occupant." Therefore, the search and seizure was presumptively reasonable under the search incident to arrest exception to the warrant requirement.[6] Accordingly, the warrantless search and seizure of the items including the .45 caliber pistol, multiple pieces of mail addressed

---

[6] On the same day as the evidentiary hearing in this case, the Supreme Court granted the petition for writ of certiorari in Arizona v. Gant, 2008 U.S. Lexis 2022, at *1 (Feb. 25, 2008) limited to the following question: "Does the Fourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured?" Id. at *1; see Arizona v. Gant, 162 P.3d 640, 643 n.2 (Ariz. 2007) ("We agree with Justice Scalia's statement that in applying the Belton doctrine to justify a search of the car of a person handcuffed and confined in a police car 'stretches the [the doctrine] beyond its breaking point.' Thorton, 541 U.S. at 625 (Scalia, J., concurring in the judgment)."). Until the Supreme Court announces a rule to the contrary, this Court is bound to follow current Ninth Circuit authority which allows an officer, incident to a lawful arrest, to search an arrestee's vehicle after he or she is handcuffed and placed in the patrol car. See Weaver, 433 F.3d at 1107; Osife, 398 F.3d at 1144.

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

to people other than defendant, three credit cards not in defendant's name, and a 1" x 1" baggy, was presumptively reasonable and did not violate defendant's Fourth Amendment rights.

### 3. Search of Mini Cooper at the Fife Police Department's secure lot

The search of the Mini Cooper in the Fife Police Department's secure lot presents a closer question. Given the Court's analysis concerning the search of the Mini Cooper incident to defendant's arrest, the important question here is whether this same exception applies once the Mini Cooper was towed to the Fife secure lot. Defendant asserts that because the Mini Cooper was moved and the search was not contemporaneous to his arrest, the search incident to arrest exception does not apply. See Dkt. #48 at 6-8 (citing United States v. Ramos-Oseguera, 120 F.3d 1028 (9th Cir. 1997); United States v. Vasey, 834 F.2d 782 (9th Cir. 1987).

In applying Belton, the Ninth Circuit has recently emphasized that the search incident to arrest exception "turns not upon the moment of arrest versus the moment of search but upon whether the arrest and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former." Weaver, 433 F.3d at 1106 (emphasis added) (quoting United States v. McLaughlin, 170 F.3d 889, 893 (9th Cir. 1999)).

Defendant does not dispute that his arrest on November 14, 2005 by Officer Luckman was lawful. Accordingly, the question here is whether the search of defendant's Mini Cooper in the Fife Police Department's secure lot was not so separated in time or by intervening acts that the search can reasonably be considered incident to defendant's arrest in the casino parking lot. See id. at 1106.

After defendant was placed in Officer Luckman's patrol car in the casino parking lot, Officer Luckman testified that he engaged in the search of the Mini Cooper until the two units from the Fife Police Department had to depart the casino. Officer Luckman called for a tow of the Mini Cooper because he could not reasonably and safely search the Mini Cooper alone in the parking lot of a casino while defendant remained in custody in the back of the patrol car. The

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

car was towed approximately 20 blocks, which took only about five minutes. Defendant remained in Officer Luckman's patrol car while he followed the tow truck directly to the Fife secure lot. Although the Mini Cooper was moved and the search was conducted more than an hour after the arrest, given the specific facts here, the search in the Fife secure lot was presumptively incident to defendant's arrest. Although the time between defendant's arrest and the search exceeds the thirty to forty-five minute delay in Vasey, but-for the departure of the Fife officers, Officer Luckman would have continued searching the vehicle at the casino parking lot incident to defendant's arrest. See Vasey, 834 F.2d at 787 ("[T]he search took place anywhere from thirty to forty-five minutes after Vasey had been arrested, handcuffed, and placed in the rear of the police vehicle. The officers conducted several conversations with Vasey while he was in the police vehicle."). And, there is no evidence that Officer Luckman was engaged in any lengthy or significant acts before the search, like repeatedly questioning defendant before conducting the search as in Vasey. Id. Thus, the Court construes that the search in the secure lot was contemporaneous with the arrest. This, however, does not end the analysis. See Weaver, 433 F.3d at 1107 n.1 ("We reiterate, however, that time alone is never dispositive of the contemporaneity inquiry under Belton."). Under the facts here, the Court also does not view the tow as an intervening act. Unlike Ramos-Oseguera, defendant here was not removed to the police station, but was inside the Officer Luckman's patrol car—the same place he had been while Officer Luckman conducted the search in the casino parking lot. The Court views the search in the Fife secure lot as simply a continuation of the search at the casino parking lot. The vehicle's relocation to the Fife secure lot was simply necessitated by a legitimate concern for Officer Luckman's safety.

Accordingly, the warrantless search and seizure of the items including the red satchel[7]

---

[7] Given the Court's guidance on the lawfulness of the search in Fife secure lot, the search of the satchel was also presumptively lawful. See Ramos-Oseguera, 120 F.3d at 1036 ("Belton permitted a

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS

-12-

containing, among other things, a partially completed Washington State driver's license on photo paper, multiple Washington State driver's licenses with defendant's picture but the names of others, a scale with a white residue, a zip-lock bag containing what appeared to be methamphetamine, mail addressed to people other than defendant, and credit cards in the names of others was presumptive reasonable and did not violate defendant's Fourth Amendment rights.

### III.  CONCLUSION

For all of the foregoing reasons, "Defendant Chang's Motion to Suppress Evidence for Illegal Search and Seizure" (Dkt. ## 47, 48) is DENIED.

DATED this 3rd day of March, 2008.

*[signature]*

Robert S. Lasnik
United States District Judge

---

search of a car's entire passenger compartment, <u>including the inside of containers</u>, as a search incident to arrest.") (emphasis added).

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS                    -13-